## COYNE, Guardian, etc., *v.* CAPLES.

*(District Court, D. Oregon.*   August 25, 1881.)

1. EXCLUSIVE USE OF VESSEL BY A PART OWNER.
    A part owner of a vessel is not entitled to her exclusive use without giving security to his co-owner.

2. PROFITS FROM USE OF VESSEL.
    Where a part owner of a vessel employs her on his own account and risk, the other part owners are not entitled to a share of the profits arising from such employment.

3. COMPULSORY SALE OF VESSEL.
    Where the equal part owners of a vessel cannot agree concerning her use and employment, a court of admiralty has jurisdiction, upon the application of either party, to compel a sale of the same and divide the proceeds between the owners; but, where the disagreement arises between unequal owners, the jurisdiction is, though without good reason, doubted and denied.

In Admiralty.

*C. J. McDougall,* for libellant.

*Addison C. Gibbs,* for defendant.

DEADY, D. J.   The libellant J. F. Coyne brings this suit for himself and his ward, George T. Coyne, to procure a sale of the steamboat Gazelle, and a division of the proceeds between himself and his equal part owner, Hezekiah Caples.

The testimony concerning the circumstances or agreement under which Caples came into possession of the vessel is conflicting, but the facts appear to be as follows:

In December, 1880, and for some time previous, the stern-wheel steam-boat, of 150 tons burden, called the Gazelle, was licensed and enrolled at this port and owned by J. F. Coyne, George T. Coyne, and Omer J. Bryant—the latter having one-half, J. F. Coyne one-sixth, and George T. Coyne one-third interest, when Bryant sold his interest to Caples for $1,500.   The employment of the vessel had not been profitable, and the boat then owed J. F. Coyne $509.60 on account of money expended by him in payment of her expenses beyond his share, and was in debt to Harvey Higley, the engineer, the sum of $250 for wages. On December 23d Caples paid Coyne for said Bryant said sum of $509.60, and agreed to pay Higley said $250 within a year—the latter agreeing to release his claim against Coyne, or his interest in the boat therefor; and said Caples and Coyne, in consideration of the premises, and that the former would give security to pay said Higley's demand, and keep the boat in good order and free from debt, agreed that said Caples might take said boat into his possession, and manage and employ her where and as he pleased.   In pursuance of this agreement, and with the consent of Coyne, Caples had the machinery of the vessel repaired at a cost of not exceeding $500, and then, without giving any bond to the former, took her down the Columbia river, and had her enrolled at the port of Astoria, with himself as managing owner, where she has since

been employed, principally in carrying lumber and railway ties. The employment of the vessel by Caples appears to have been profitable, and she has been kept in good condition, but not free from debt. The claims now existing against her, and incurred since she came into his possession and control, amount to not less than $500 and probably more.

In his libel Coyne alleges that Caples was not only to give security as aforesaid, but also to account to him for half the profits, if any; while in his answer, Caples claims that he was not bound to account for the profits, or even give security for any purpose, but that he obtained and was entitled indefinitely to the exclusive possession and use of the vessel, in consideration of the $509.60 paid by him to Coyne. But the evidence in my judgment does not support either of these allegations. And in coming to this conclusion, the conflicting evidence of the parties and their friends is controlled by the consideration that it is absurd to suppose that an equal part owner of a vessel would consent, without any corresponding consideration, that another equal owner might take her and employ her when and where and as long as he pleased, without giving security to safely return or account for the interest entrusted to his use and care.

The payment of the $509.60 by Caples was no consideration for such use and possession, because in making the same he was only discharging his own debt to Bryant, and Coyne was not materially benefited thereby, as Bryant's interest was good security to him therefor. Indeed, if there had ever been such an understanding between the parties, under the circumstances, Coyne might nevertheless assert his right to security, and compel Caples to comply or give up the use of the vessel. Nor is it reasonable to suppose that such part owner in a vessel would agree to take her upon security to the other part owner and employ her at his own risk and expense, and share the profits, if any, with the latter. Such an arrangement is regarded as unjust, and therefore a part owner who refuses to join in or contribute to the employment of the vessel, is not entitled to a share of the profits. *Willings* v. *Blight*, 2 Pet. Ad. Dec. 288; *The Marengo*, 1 Low. Dec. 52; Story, Part. §§ 428, 431. Besides, it does not appear that Coyne ever demanded or sought to have an account from Caples, and in his letter to the latter of May 11th, asking him in effect to purchase his interest in the vessel, or return her to this port, because he had determined to sell and wanted "to avoid any further risk," nothing is said or suggested on the subject.

There seems to be some doubt in the books as to the jurisdiction of a court of admiralty to compel a sale of a vessel on account of a

disagreement between her owners as to her employment at the instance of a minority in value. No substantial reason is given for declining the jurisdiction, while every argument suggested by analogy and convenience is in favor of it. Story, Part. §§ 437–39; 2 Par. S. & A. 242; Ben. Ad. § 274. But in a case of an equal division of interests, the jurisdiction is generally admitted. *Skrine* v. *The Hope,* Bee, 2; *Orleans* v. *Phœbus,* 11 Pet. 183; Story, Part. § 439; 3 Kent, 153, 154, note *a.;* *The Ocean Belle,* 6 Ben. 253; *Davis* v. *Brig Seneca,* 18 Am. Jurist, 486; *The Marengo,* 1 Sprague's Dec. 506; *Fox* v. *The Lodemeia,* Crabbe, 271; Ben. Ad. § 274.

Yet, under the circumstances of this case, it does not seem equitable to order a sale at once, and thereby possibly prevent Caples from completing or having the full benefit of a profitable business in which he now appears to be engaged.

The libellant, although entitled to security, has acquiesced so long in Caples using the vessel without it, that his demand for a compulsory sale at this juncture is open to the suspicion that he is asserting his right when he may think he has Caples at a disadvantage that will compel him to buy at a high price. But it cannot be denied that Caples was in the wrong in taking the vessel away from Coyne, and enrolling her and employing her in another district, without giving the proper security, or at least offering to do so, when written to by Coyne as aforesaid, or even after the suit was brought, instead of which he insisted in his answer upon his right to retain the exclusive use and possession of the vessel without security or account, during his pleasure.

The decree of the court will be that within 10 days Hezekiah Caples enter into a stipulation with sureties, to be approved by the clerk of this court, in double the value of J. F. and George T. Coyne's interest in said steamboat Gazelle, to-wit, the sum of $3,000, for the return thereof to this port, and to the possession of the libellant, on or before January 1, 1882, in as good condition as he received her after the repairs upon her machinery, necessary deterioration excepted; and unless he does so, that execution may issue against his property for the amount of said value as upon a decree of this court. And in default of said stipulation, that said vessel be sold as upon execution, and the proceeds brought into this court for distribution; and that upon the return of said vessel to this port, as aforesaid, she may be sold, and the proceeds disposed of as aforesaid upon the application of either party herein; and that the libellant recover his costs and expenses, to be taxed.