## MADRUGA *v.* SUPERIOR COURT OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO.

No. 35.   Argued October 19–20, 1953.—Decided January 18, 1954.

*Eli H. Levenson* argued the cause and *Thomas M. Hamilton* filed a brief for petitioner.

*Northcutt Ely* argued the cause for respondent. With him on the brief was *Robert L. McCarty.* *Herbert Kunzel* filed an appearance for respondent.

Mr. Justice Black delivered the opinion of the Court.

This case for sale of a vessel and partition of the proceeds pursuant to a California statute began in the Superior Court of San Diego, the home port of the vessel. The plaintiffs were eight individuals including Edward, Anthony, and Joseph Madruga. The defendant was Manuel Madruga on whom personal service was had by summons. The defendant owned a 15% interest and the eight plaintiffs owned undivided interests aggregating 85% in a ship certificated under the maritime laws of the United States. The defendant 15% owner challenged the jurisdiction of the San Diego court on the ground that only the United States district court sitting in admiralty could take jurisdiction to consider such a case. The San Diego court decided it had jurisdiction and was upheld by the State Supreme Court which declined to issue a writ of prohibition.[1]   40 Cal. 2d 65, 251 P. 2d 1. Certiorari was granted to consider the state court's jurisdiction.   345 U. S. 963.

*First.* Article III, § 2, of the Constitution extends the judicial power to "all Cases of admiralty and maritime Jurisdiction. . . ." And since the first Judiciary Act, United States district courts have had jurisdiction of all civil cases of "admiralty or maritime jurisdiction . . . ." 28 U. S. C. § 1333. Whether this grants United States

---

[1] The State Supreme Court's judgment finally disposing of the writ of prohibition is a final judgment reviewable here under 28 U. S. C. § 1257.

district courts power to sell ships for partition of the proceeds has never been squarely decided by this Court. The partition power of admiralty was discussed but left in doubt by Mr. Justice Story in *The Steamboat Orleans* v. *Phoebus,* 11 Pet. 175, 183 (1837).[2] Some cases in lower federal courts appear to support the jurisdiction of district admiralty courts to order sales for partition, at least where there is a dispute as to use of the ship between part owners having equal interests and shares.[3] Other cases indicate that admiralty should not exercise jurisdiction to order partition of ships at the instance either of minority or majority interests.[4] The reasoning in all the

---

[2] "The jurisdiction of courts of admiralty in cases of part owners, having unequal interests and shares, is not, and never has been applied to direct a sale, upon any dispute between them as to the trade and navigation of a ship engaged in maritime voyages, properly so called. The majority of the owners have a right to employ the ship in such voyages as they may please; giving a stipulation to the dissenting owners for the safe return of the ship; if the latter, upon a proper libel filed in the admiralty, require it. And the minority of the owners may employ the ship in the like manner, if the majority decline to employ her at all. So the law is laid down in Lord Tenterden's excellent Treatise on Shipping. Abbot on Ship. part 1, chap. 3, sec. 4 to sec. 7. If, therefore, this were a vessel engaged in maritime navigation, the libel for a sale could not be maintained."

Some have thought that Mr. Justice Story here rejected the idea of admiralty jurisdiction to sell ships for partition. But, however that may be, he made it clear in his book on partnership that he believed admiralty courts did have such jurisdiction. Story, Partnership (1st ed. 1841), § 439, n. 1.

[3] *E. g., The Seneca,* Fed. Cas. No. 12,670 (C. C. E. D. Pa. 1829); *The Emma B.,* 140 F. 771 (D. C. D. N. J. 1906). Compare discussion in *Davis* v. *The Seneca,* Fed. Cas. No. 3,650 (D. C. E. D. Pa. 1828) rev'd, *The Seneca, supra.*

[4] *E. g., Lewis* v. *Kinney,* Fed. Cas. No. 8,325 (C. C. E. D. Mo. 1879); *The Red Wing,* 10 F. 2d 389 (D. C. S. D. Cal. 1925); see *Coyne* v. *Caples,* 8 F. 638, 639–640 (D. C. D. Ore. 1881); *Fischer* v. *Carey,* 173 Cal. 185, 189–192, 159 P. 577, 578–580 (1916).

cases appears to have been that majority control of the ship's operations was in the public interest and admiralty should interfere only to protect minority interests by such special indemnities or bonds as the court might require of the controlling majority. Other cases have indicated that either a majority or a minority could obtain partition from admiralty on a proper showing.[5] Some state courts have sold ships for partition,[6] and even at the behest of minority interests;[7] others have refused to do so.[8] However the diverse holdings in the cases may be viewed,[9] there can be no doubt today that United States district courts have broad power over ships that ply navigable waters and are required to be registered or enrolled under a series of Acts of Congress that have been in effect since the first one was passed September 1, 1789.[10] 1 Stat. 55. This Court has said that admiralty's broad power can under some circumstances be extended to protect the rights and title of persons dealing in such ships. *White's Bank* v. *Smith,* 7 Wall. 646, 656. On the other hand, the Court has held that admiralty cannot exercise jurisdiction over a variety of actions which may change or otherwise affect possession of or title to vessels. *The*

---

[5] *Tunno* v. *The Betsina,* Fed. Cas. No. 14,236 (D. C. D. S. C. 1857).

[6] *E. g., Andrews* v. *Betts,* 8 Hun (N. Y.) 322 (1876); *Francis* v. *Lavine,* 26 La. Ann. 311 (1874).

[7] *Swain* v. *Knapp,* 32 Minn. 429, 21 N. W. 414 (1884); *Reynolds* v. *Nielson,* 116 Wis. 483, 93 N. W. 455 (1903).

[8] *E. g., Fischer* v. *Carey,* 173 Cal. 185, 159 P. 577 (1916); *Cline* v. *Price,* 39 Wash. 2d 816, 239 P. 2d 322 (1951).

[9] Citations to cases with these varied holdings are collected in Note 302, 28 U. S. C. A. § 1333, 90 Am. St. Rep. 378–380 and in L. R. A. 1917A, 1114–1116.

[10] In England King's Bench prohibited Admiralty's exercise of partition jurisdiction in *Ouston* v. *Hebden,* 1 Wils. K. B. 101, 95 Eng. Rep. 515 (1745). However, jurisdiction, which extended even to minority share owners, was later given to admiralty by statute. The Admiralty Court Act, 1861, 24 Vict., c. 10, § 8.

*Steamer Eclipse,* 135 U. S. 599, 608.[11]   We think, however, that the power of admiralty, as Congress and the courts have developed it over the years, is broad enough for United States district courts to order vessels sold for partition.   This brings us to the contention that this federal admiralty power is exclusive.

*Second.* Had Congress simply granted district courts "admiralty or maritime jurisdiction exclusive of the states" California might not have power to order partition of a ship.   But Congress did not stop there.   It went on in the first Judiciary Act to say "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."   1 Stat. 73, 77.[12]   Viewed superficially the clause giving United States district courts exclusive admiralty or maritime jurisdiction appears inconsistent with the clause which permits persons to sue on maritime claims in common law courts.   But former decisions of this Court have clarified this seeming conflict.   Admiralty's jurisdiction is "exclusive" only as to those maritime causes of action begun and carried on as proceedings *in rem,* that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien.   See, *e. g., The Moses Taylor,* 4 Wall. 411, 427; *The Resolute,* 168 U. S. 437, 440–441.   It is this kind of *in rem* proceeding which state courts cannot entertain. But the jurisdictional act does leave state courts "competent" to adjudicate maritime causes of action in proceedings *"in personam,"* that is, where the defendant is a per-

---

[11] For applications of this decision, see, *e. g., The Guayaquil,* 29 F. Supp. 578 (D. C. E. D. N. Y. 1939); *Hirsch* v. *The San Pablo,* 81 F. Supp. 292 (D. C. S. D. Fla. 1948).

[12] The 1948 and 1949 revisions of 28 U. S. C. § 1333 amended the above clause.   It now reads: ". . . saving to suitors in all cases all other remedies to which they are otherwise entitled."   We take it that this change in no way narrowed the jurisdiction of the state courts under the original 1789 Act.

son, not a ship or some other instrument of navigation. *Rounds* v. *Cloverport Foundry & Machine Co.*, 237 U. S. 303, 306–309. Aside from its inability to provide a remedy *in rem* for a maritime cause of action, this Court has said that a state, "having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit" so long as it does not attempt to make changes in the "substantive maritime law." *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 124.

The proceedings in this California partition case were not *in rem* in the admiralty sense. The plaintiffs' quarrel was with their co-owner, not with the ship. Manuel Madruga, not the ship, was made defendant. Thus the state court in this proceeding acts only upon the interests of the parties over whom it has jurisdiction *in personam*, and it does not affect the interests of others in the world at large, as it would if this were a proceeding *in rem* to enforce a lien. The California court is "competent" to give this partition remedy and it therefore has jurisdiction of the cause of action.

*Third.* Petitioner contends that for the California court to entertain this partition suit at the instance of the majority shipowners would run counter to an admiralty rule which is said to permit sales for partition only as between equal interests. Such a national admiralty rule would bind the California court here, even though it has concurrent jurisdiction to grant partition. See *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239; *Butler* v. *Boston S. S. Co.*, 130 U. S. 527, 557–558. Congress has passed detailed laws regulating the shipping industry with respect to ownership, sales, mortgages and transfers of vessels.[13] It has even prescribed special rules for ship

---

[13] Title 46 U. S. C. In particular see: § 11, limiting United States ship registration to ships owned by United States citizens or United States corporations having only citizens as officers (from Act of Dec. 31, 1792, c. 1, § 2, 1 Stat. 288); § 25, prescribing a form for registra-

registration after their judicial sale.[14]  But Congress has never seen fit to bar states from making such sales, or to adopt a national partition rule.[15]  Nor has any such rule been established by decisions of this Court.  And as pointed out above, decisions of lower federal courts and of state courts show varying ideas as to what kind of partition rule should be adopted if any.  We do not think the circumstances call on us to add to congressional regulation by attempting establishment of a national judicial rule controlling partition of ships.  See *Kelly* v. *Washington*, 302 U. S. 1, 9–14.  Cf. *Cooley* v. *Board of Wardens*, 12 How. 299.

The scarcity of reported cases involving such partition since the Constitution was adopted indicates that establishment of a national partition rule is not of major importance to the shipping world.  We can foresee at this

tion which requires detailed information as to the ship's description, its builders, and the identity and proportion of ownership of all its owners (from Act of Dec. 31, 1792, c. 1, § 9, 1 Stat. 291); § 39, requiring new registration upon any sale or alteration of a ship (from Act of Dec. 31, 1792, c. 1, § 14, 1 Stat. 294); § 808, placing restrictions on the sale to aliens of vessels owned by a United States citizen or corporation (from Act of Sept. 7, 1916, c. 451, § 9, 39 Stat. 730, as amended by Act of July 15, 1918, c. 152, § 3, 40 Stat. 900); § 921, providing that no sale, conveyance or mortgage of a vessel of the United States shall be valid against one other than the grantor or mortgagor, his heirs or persons with notice, until recorded (from Act of June 5, 1920, c. 250, § 30, 41 Stat. 1000).

[14] 46 U. S. C. § 34 provides for registration of vessels sold under process of law where the former owner retains the ship's registration, upon the new owner's meeting the legal requirements for registry (from Act of Mar. 2, 1797, c. 7, 1 Stat. 498).

[15] It is noteworthy that Congress has explicitly placed partition actions under federal jurisdiction only where the United States is a tenant, 28 U. S. C. §§ 1347, 2409.  Partition of real estate belonging to Oklahoma Indians has been made subject to state laws, 25 U. S. C. § 355.

time no possible injury to commerce or navigation if states continue to be free to follow their own customary partition procedures. Easily accessible local courts are well equipped to handle these essentially local disputes. Ordering the sale of property for partition is part of their everyday work. Long experience has enabled states to develop simple legislative and judicial partition procedures with which local judges and counsel are familiar. Federal courts have rarely been called on to try such disputes and have established no settled rules for partition. In some parts of the country the inaccessibility of federal courts as compared with state courts would cause needless expense and inconvenience to parties. We have no reason to believe federal procedure if applied to partition cases would be simpler, speedier, less expensive or fairer than the procedures of state courts. Nor are we convinced that any theoretical benefits to shipping would justify us in restricting the partition jurisdiction of state courts by fashioning an exclusive national rule to govern quarreling shipowners. Cf. *Halcyon Lines* v. *Haenn Ship Ceiling Corp.*, 342 U. S. 282, 285–287. State laws making partition easily available, like state pilotage laws, see *Cooley* v. *Board of Wardens*, 12 How. 299, may well help fill the needs of a vigorous commerce and navigation.[16] Since the absence

---

[16] "The rule of the civil as of the common law, that no one should be compelled to hold property in common with another, grew out of a purpose to prevent strife and disagreement: Story's Eq. sec. 648; and additional reasons are found in the more modern policy of facilitating the transmission of titles and in the inconvenience of joint holding." *Caldwell* v. *Snyder*, 178 Pa. 420, 422, 35 A. 996. ". . . [P]artition is a right much favored, upon the ground that it not only secures peace, but promotes industry and enterprise, that each should have his own." *Cannon* v. *Lomax*, 29 S. C. 369, 371, 7 S. E. 529, 530.

of such a national rule has produced few difficulties over the years, it appears to us that it would be better to let well enough alone.

*Affirmed.*

MR. JUSTICE REED concurs in the judgment of the Court.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE JACKSON joins, dissenting.

For one reason or another, eight co-owners having eighty-five percent interest in a vessel wished to terminate the enterprise but found the present petitioner, owner of the remaining fifteen percent, opposed to sale. Accordingly they asked a California State court for judicial sale of the vessel and appropriate distribution of the proceeds among all the owners. This is the only claim the plaintiffs made. There was no claim to enforce a personal right against the petitioner; no claim of any sort for which the levy on the ship as security was sought for some personal obligation owing from the petitioner. The jurisdiction of the State court was invoked exclusively for the sale of a vessel.

If this is not an action against the thing, in the sense in which that has meaning in the law, then the concepts of a *res* and an *in rem* proceeding have an esoteric meaning which I do not understand. From the terms of the complaint for partition through the opinion of this Court authorizing the State court to grant it, there is not the remotest suggestion that we are dealing with a remedy to enforce a separate underlying personal claim. Here the ship's the thing—not a claim outside the ship for which an ancillary remedy against the ship is sought. Cf. *Knapp, Stout & Co.* v. *McCaffrey*, 177 U. S. 638. Is it to be doubted that if California procedure required the proceeding to be brought by name against the Oil Screw

Vessel Liberty, Official No. 256332, or if the action had in fact been so entitled, it would inescapably be deemed an action *in rem?* To make the existence of State power depend on such tenuous formalities is to make questions of jurisdiction in matters maritime, as between federal and State courts, turn on distinctions much too frail.

Of course State courts are free to give the relief here sought, if admiralty has not jurisdiction of a libel for partition. State law would then not be encroaching upon the admiralty jurisdiction of the federal courts. Whether admiralty has such jurisdiction, except when the contest over the use of the vessel is between owners whose interest is equally divided, has not been adjudicated by this Court, and the learning on the subject is not compelling. The problem has received its fullest consideration in *Fischer* v. *Carey,* 173 Cal. 185, 159 P. 577 (1916), and substantially on the basis of arguments there elaborated, I conclude that admiralty does have jurisdiction in the circumstances of this case. The nub of the holding of that case is that "the jurisdiction of the courts of the United States in admiralty is full and complete touching the matter of sale under the circumstances here indicated, that is to say, where dissentient owners are at strife over the use to be made of the ship; for it must, from the nature of admiralty jurisdiction, be a fundamental part of that jurisdiction to exercise control over the *rem*—the ship itself." 173 Cal., at 198, 159 P., at 582.[1]

The Supreme Court of California in sustaining the State's power which it had denied in *Fischer* v. *Carey* did not overrule that case. It reached the result it did, because it found that the "saving clause," descended from the First Judiciary Act, 1 Stat. 73, 77, had been drastically modified by the 1948 revision of the Judicial Code. 28

---

[1] *Fischer* v. *Carey* was recently followed in *Cline* v. *Price,* 39 Wash. 2d 816, 239 P. 2d 322 (1951).

U. S. C. § 1333.[2]   The Reviser's Notes completely refute this view.   And since this Court does not adopt the construction given § 1333 by the California Supreme Court, the argument against it need not be elaborated.

Once it is established that the federal courts have jurisdiction and that the remedy here sought in a State court has "all the essential features of an admiralty proceeding *in rem,*" *The Hine* v. *Trevor,* 4 Wall. 555, 571, the disposition of this case is clearly controlled by decisions of this Court.   They were thus summarized in an opinion for the Court by Mr. Justice Brandeis, than whom no member of this Court gave wider scope to concurrent State jurisdiction in maritime matters: "A State may not provide a remedy *in rem* for any cause of action within the admiralty jurisdiction."   *Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109, 124.

From the admiralty clause of the Constitution, this Court has drawn probably greater substantive law-making powers than it exercises in any other area of the law. See, *e. g., The Osceola,* 189 U. S. 158.   Broad as are the implications of this clause, it does not authorize this Court to decide as a matter of policy, wholly untrammeled by the historic roots of admiralty, what relief may be sought exclusively in the federal admiralty courts and what may be concurrently given by the State courts.   It is significant that the need for a body of maritime law, applicable throughout the Nation and not left to the diversity of the several States, was the one basis for the creation of a system of inferior federal courts, authorized by the Constitution, which was recognized by every shade of opinion at the Philadelphia Convention.

---

[2] The original "saving clause" read: "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."   28 U. S. C. § 1333 now reads: "saving to suitors in all cases all other remedies to which they are otherwise entitled."

Were Congress to authorize the States to exercise jurisdiction for the partition of vessels, we would of course have a very different question than the one now before us, the more so because one may assume that such a statute would differentiate between small craft plying within a limited area and ocean-going vessels. This Court cannot on its own initiative make such differentiations, regarding the power of State courts, as between small vessels and large. Whatever power may be exercised by Congress in ceding national maritime jurisdiction to the States, it is not for this Court to allow State courts to have concurrent jurisdiction *in rem,* solely because the "establishment of a national partition rule is not of major importance to the shipping world."