Rosenblatt, J.
(dissenting in part). We concur with the majority insofar as it holds that maritime law does not preempt *591 Labor Law § 200 or § 241 (6). In our view, however, maritime law preempts Labor Law § 240 (1) and we therefore dissent in part.
As a threshold matter, admiralty jurisdiction exists in this case (see, Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co., 513 US 527). Plaintiff was injured as he stood on a “float stage” in navigable waters. At the time of the accident, plaintiff was repairing a wood fender system on a pier extending over the East River. The City of New York owned the pier and used it in connection with its garbage transfer station. The fender system protected the pier from arriving and departing garbage barges. The cause of plaintiffs injury is traceable to a passing tugboat, which created a wake that disrupted a moored construction barge. Plaintiff was cutting a piece of timber from the fender system. A crane mounted to the construction barge secured the timber. When the tugboat’s wake disrupted the barge, the crane dislodged the timber and, in the process, the timber struck plaintiff. Accordingly, both the construction work and the cause of the injury have a substantial connection to maritime activity.
The conflict between Labor Law § 240 (1) and maritime law could not be plainer: Under Labor Law § 240 (1), an injured worker’s contributory negligence does not reduce a defendant’s liability.[1] Under maritime law, it does.[2] The conflict is irreconcilable. And it is a matter of no small consequence, considering that these doctrines go to the very heart of liability and recovery, and directly implicate the harmonious administration of maritime law.
L
The United States Supreme Court has explained that “admiralty has developed and now follows its own * * * more flexible rule which allows * * * consideration of contributory negligence in mitigation of damages as justice requires” (see, Pope & Talbot v Hawn, supra, 346 US, at 409; see also, The Max Morris v Curry, 137 US 1, 11 [tracing early concepts of comparative fault to a historic maritime concern for justice and equity]). Although the exercise of Federal admiralty jurisdic *592 tion does not automatically displace State law, the Supremacy Clause requires preemption if the application of State law would make inroads on admiralty’s goals of uniformity and harmony (see, Grubart, 513 US, at 546, supra).
As the majority has repeatedly emphasized, States have important interests that must be recognized in any preemption analysis. In keeping with the “savings to suitors” clause,[3] however, those interests — and we subscribe to their obvious importance — must be adjusted so they conform to an established, predictable body of maritime law. In the end, it is a matter of accommodation.
The Supreme Court has held that a State may “ ‘adopt such remedies, and * * * attach to them such incidents, as it sees fit’ so long as it does not attempt to make changes in the ‘substantive maritime law’ ” (Madruga v Superior Ct. of Cal., 346 US 556, 561, supra [quoting Red Cross Line v Atlantic Fruit Co., 264 US 109, 124]). The Supreme Court has also held that a defendant’s liability must be measured under maritime principles instead of State law if the maritime principles implicate admiralty rights, as opposed to remedies (see, Chelentis v Luckenbach S. S. Co., 247 US 372, 384). Thus, in Pope & Talbot, the Supreme Court held that maritime comparative fault principles are “substantial admiralty rights” and therefore must prevail over a State’s contributory negligence rule (346 US, at 409-410, supra). The case before us presents precisely the same issue: plaintiff is seeking to supplant substantive maritime principles with a conflicting State law. Madruga, Pope & Talbot and Chelentis simply do not permit it.
In American Dredging Co. v Miller (510 US 443), the United States Supreme Court applied a well established two-part test governing admiralty common-law preemption. A court must determine whether State law (i) works material prejudice to a characteristic feature of maritime law, or (ii) interferes with the harmony and uniformity of maritime law (see, American Dredging Co., 510 US, at 447, supra; see also, Romero v International Term. Operating Co., 358 US 354, 373; Southern Pac. Co. v Jensen, 244 US 205, 216). If either condition exists, maritime law must prevail (see, American Dredging Co., 510 *593 US, at 447, supra). Here, we submit, the test is satisfied in both instances.
Over the years, the Supreme Court has employed various formulations for identifying characteristic features of maritime law (see, e.g., Madruga, supra, 346 US, at 561; Pope & Talbot, supra, 346 US, at 409-410; Chelentis, supra, 247 US, at 384). More recently, the Supreme Court explained that a characteristic feature of maritime law is one that either originated in admiralty or has exclusive application in admiralty (see, American Dredging Co., supra, 510 US, at 449-450). Comparative fault is such a feature.
Although its origins are shrouded,[4] early English common law suggests that comparative fault first appeared in admiralty and medieval sea codes.[5] When comparative fault arrived on our shores, it was on the shoulders of English admiralty law. As Professor Keeton aptly observed, “[o]utside of admiralty, comparative negligence did not appear in American jurisprudence until the early twentieth century” (see, Prosser and Keeton, Torts § 67, at 471 [5th ed 1984]).
The United States Supreme Court’s decisions in Pope & Talbot (346 US 406, supra) and Kermarec (358 US 625, supra) leave no doubt that comparative fault is a characteristic feature of maritime law. It is basic and fundamental to allocation of responsibility and thus lies at the heart of maritime jurisprudence. Indeed, other courts have recognized as much, concluding that the early comparative fault principle of “division of damages” is “deeply rooted in admiralty” and is therefore “an essential and characteristic feature of the substantive law of admiralty” (see, Intagliata v Shipowners & Merchants Towboat Co., 26 Cal 2d 365, 373, 159 P2d 1, 7 [1945]; see also, Scudero v Todd Shipyards Corp., 63 Wash 2d 46, 52-53, 385 P2d 551, 555 *594 [1963]; Eriksen v Long Is. Light. Co., 236 AD2d 439, 440). Of course, comparative fault has since expanded well beyond admiralty law, but the doctrine retains its deep roots in maritime jurisprudence. Given this background, we cannot resist the conclusion that comparative fault is a characteristic feature of maritime law.
Moreover, Labor Law § 240 (1) would materially prejudice the maritime doctrine of comparative fault. In a single cause of action, strict liability and comparative negligence cannot occupy the same ground. Applying strict liability would not only “materially prejudice” the comparative fault doctrine, it would eviscerate it. In this respect, Labor Law § 240 (1) differs from Labor Law §§ 200 and 241 (6). The latter create a statutory standard of care that would not otherwise exist in maritime law, but nevertheless do not invade maritime law’s bedrock principles as to fault allocation. In our view, the first prong of American Dredging Co. is fully satisfied.
So is the second. Preemption is required under that prong if application of State law interferes with the “ ‘proper harmony and uniformity’ ” of maritime law in its “ ‘international and interstate relations’” (see, American Dredging Co., 510 US, at 447, supra [quoting Southern Pac. Co. v Jensen, 244 US, at 216, supra]). Here, it does. In Pope & Talbot (346 US, at 409-410, supra), the Supreme Court held that admiralty’s comparative fault doctrine preempted application of a State contributory negligence rule. More recently, in Yamaha Motor Corp., U. S. A. v Calhoun (516 US 199, 210), the Supreme Court cited Pope & Talbot as an illustration of when the need for uniformity mandates preemption. Numerous other courts have concluded that the need for uniform application of comparative fault requires that maritime law preempt inconsistent State law (see, e.g., Miller v American President Lines, 989 F2d 1450, 1462; Hendricks v Transportation Servs. of St. John, 41 VI 21, 28 [Virgin Is]; see also, National Mar. Serv. v Petroleum Serv. Corp., 736 F2d 272, 277 [5th Cir]).
This all makes good sense. Considering that the desired goals are uniformity and harmony, it is difficult to see how these objectives can be unimpaired (or left with even a semblance of harmony) if the rules vary with the locale. One State may opt for strict liability, another for contributory negligence as a bar to recovery, another may interpose assumption of risk, while others would be free to fashion even more variants or different rules. The uniformity prong is important so that predictability will prevail over happenstance.
*595 In American Dredging Co. (510 US, at 453, supra), the Supreme Court concluded that application of a State forum non conveniens law would not unduly hamper maritime uniformity. It reached that conclusion having determined that forum non conveniens was “procedural rather than substantive” (id.). That distinction is key to the inquiry before us. Here, the strict liability rule that plaintiff would apply is undeniably substantive. Accordingly, application of strict liability would be at war with the holding in American Dredging Co.
IL
We disagree with the unpublished decision of the United States District Court in Gravatt v City of New York (1998 WL 171491, 1998 US Dist LEXIS 4886 [SD NY]). Gravatt is not binding on this Court, and we are not convinced by its reasoning. In that case, the court identified other instances in which strict liability appears in maritime law and laid considerable stress on the point. The issue, however, is not whether maritime law recognizes strict liability principles in other instances. Surely it does. But that is not relevant to the analysis at hand, because in our case, maritime law undisputedly calls for the application of comparative fault.
Grant Smith-Porter Ship Co. v Rohde (257 US 469) does not support plaintiffs position. Rohde was a fact specific case that is distinguishable from the one before us. The primary issue was whether a State workers’ compensation statute could limit an employee’s right to sue his employer for additional damages beyond the benefits provided under workers’ compensation. The Supreme Court concluded that “the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law [could] not matérially affect any rules of the sea whose uniformity is essential” (257 US, at 477, supra). Unlike Rohde, the cause of the accident and the nature of the construction work in the case before us both bear a direct relation to maritime activity. Indeed, plaintiff applied for and received benefits under the Longshore and Harbor Workers’ Compensation Act. Nor does Askew v American Waterways Operators (411 US 325) avail plaintiff. In that case, the Supreme Court emphasized that Federal environmental laws specifically invited States to enact stricter statutes relating to pollution regulation (see, Askew, 411 US, at 329-337, supra).
None of the other cases upon which the majority relies involved the displacement of a maritime law feature as
*596 fundamental as comparative fault (see, e.g., Yamaha Motor Corp., U. S. A. v Calhoun, 516 US 199, supra [State wrongful death statute given effect]; Western Fuel Co. v Garcia, 257 US 233, 242 [same]; American Dredging Co., 510 US 443, 452, supra [State forum non conveniens law given effect]; Wilburn Boat Co. v Fireman’s Fund Ins. Co., 348 US 310 [State contract law principle given effect]). In each of these cases the Supreme Court merely concluded that application of State law would not violate its standards for maritime preemption.
Closer in point is State of Maryland Dept. of Natural Resources v Kellum (51 F3d 1220 [4th Cir]). There, the Court held that maritime comparative fault principles preempted a Maryland statute that “significantly changed the standard of care owed by the defendants from ordinary care, as equated with negligence, to that of strict liability” (51 F3d, at 1228, supra).
We would modify the order of the Appellate Division and hold that Federal admiralty law preempts Labor Law § 240 (1).
Chief Judge Kaye and Judges Ciparick and Wesley concur with Judge Smith; Judge Rosenblatt dissents in part and votes to modify in a separate opinion in which Judge Levine concurs.
Order affirmed, etc.

. See, Gordon v Eastern Ry. Supply, 82 NY2d 555, 562; Stolt v General Foods Corp., 81 NY2d 918, 920.

. See, United States v Reliable Transfer Co., 421 US 397, 405-406; Kermarec v Compagnie Generale Transatlantique, 358 US 625, 629; Pope & Talbot v Hawn, 346 US 406, 409-411.

. See, 28 USC § 1333 (1). The “savings to suitors” clause underlies a venerable doctrine, which has been with us since the beginnings of our Republic. It found early expression in the Judiciary Act of 1789 (§ 9, 1 US Stat 73, 76-77) and preserves the jurisdiction of State courts to entertain in personam maritime causes of action (see, Madruga v Superior Ct. of Cal., 346 US 556, 560-561).

. Scholars have found comparative fault principles as far back as the Digest of Justinian — completed in 533 A.D. (see, Mole and Wilson, A Study of Comparative Negligence, 17 Cornell L Quarterly 333, 337 [1932]; see also, Leibman et al., The Effect of Lifting the Blindfold From Civil Juries Charged with Apportioning Damages in Modified Comparative Fault Cases: An Empirical Study of the Alternatives, 35 Am Bus LJ 349, 355-356 [1998]).

. See, Turk, Comparative Negligence on the March, 28 Chi-Kent L Rev 189, 220-225 [1950]; Mole and Wilson, supra, at 339 [considering that contributory negligence worked a complete bar to recovery, the courts of admiralty “early showed their displeasure over the practical working of the common-law rule * * * and, desiring to overcome the obvious hardships that arose from its application, formulated more just rules for determining who should bear the loss”]; see generally, Wood and Deere, Comparative Fault § 1:10, at 14, 19 [3d ed 1996],