377 So.2d 738 (1979)
Albert J. ENDRUSCHAT and Mary Elizabeth Endruschat, His Wife, and William Roy Trevarthen and Patricia F. Trevarthen, His Wife, Appellants,
v.
AMERICAN TITLE INSURANCE COMPANY et al., Appellees.
AMERICAN TITLE INSURANCE COMPANY, Appellant,
v.
Albert J. ENDRUSCHAT and Mary Elizabeth Endruschat, His Wife; William Roy Trevarthen and Patricia F. Trevarthen, His Wife, and Flagship First National Bank of Boynton Beach, a Florida Banking Corporation, Appellees.
Nos. 78-955, 78-1357.
District Court of Appeal of Florida, Fourth District.
November 21, 1979.
Rehearing Denied December 27, 1979.
*739 Donald L. Brooks, of L.M. Taylor, Lawyers, North Palm Beach, attorneys for appellants-appellees Endruschat and Trevarthen.
Osborne Walker O'Quinn, Fort Pierce, attorney for appellant-appellee American Title Insurance Company.
*740 Sam D. Phillips, Jr. of Phillips, Babbitt & Cook, West Palm Beach, attorneys for appellee, Flagship First National Bank of Boynton Beach.
LETTS, Judge.
This consolidated appeal stems from: (1) the trial judge's ruling denying coverage under an owner's policy of title insurance, which omitted a restriction duly recorded in the public records limiting use of the real property in question to residential purposes only, thus allegedly preventing its desired use as a dental clinic; and (2) the award of attorneys fees and costs to the mortgage lender which was the recipient of a simultaneous mortgagee title policy, said fees and costs incurred during its defense of a suit filed by the purchasers against both the lender Bank and the Title Company. We reverse the former and affirm the latter.
Two dentists entered into a contract to purchase certain improved real estate with the avowed purpose of converting same for use as a dental clinic. They saw no necessity for legal counsel, instead taking advantage of the services of the Title Company engaged by the seller to complete the closing of the sale. To facilitate the project, the dentists arranged for a construction loan from the lender Bank which agreed, at the request of the dentists, to accept a simultaneous mortgagee policy from the same Title Company. The dentists paid this extra premium.
Pursuant to this arrangement, appropriate binders were delivered by the Title Company, which binders, by mistake, did not contain the recorded restriction preventing the use of the property for other than single family residential purposes. The closing was a bifurcated affair, the mortgage papers being signed under the auspices of the Bank and the actual sale being concluded at the office of the Title Company. Thereafter, after partial disbursement, the Bank's attorney by accident discovered the existence of the omitted restriction and suspended any further loan disbursements. All parties were advised, contemplated construction was postponed, the Title Company denied exposure and the dentists engaged their own attorneys to quiet title which was successfully concluded some nine months later. Thereafter, disbursements were resumed and the project satisfactorily completed.
The dentists wanted reimbursement for the fees and costs incurred in the quiet title suit, plus damages for increased building costs occasioned by the delay. Accordingly, they sued the Title Company under the theory of negligence and the Bank for breach of contract. Without unnecessary recitation of all the many pleading maneuvers involved, the Bank cross-claimed against the Title Company demanding indemnity, attorneys' fees and costs.
The question of the dentists' damages was never resolved, the trial judge reluctantly concluding, as a matter of law, that the Title Company had no liability based on the holding in Blessing v. American Title and Insurance Co., 121 So.2d 455 (Fla. 1st DCA 1960). As to the Bank, the trial judge later ruled that the suit which it was perforce involved in, was one contemplated by the contract provision of the mortgagee policy obligating the Title Company "at its own costs and without delay [to] provide for the defense of an insured in all litigation ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance or any other matter insured against by this policy."
We affirm this latter ruling as to the Bank without further comment.
As to coverage under the owners' policy, the Title Company initially contends that the omission of the residential restriction covering this particular parcel was harmless because another exception which was listed contained the very same restriction. Thus the purchasers were on notice of the fact that the property could not be used as a dental clinic. We would agree with this contention except that the restriction which was listed was considered to be ineffective as to the property in question by the Bank's attorney who caused the dentists to be so advised at closing. This listed restriction *741 which did appear on the binder (and later the policy) was placed on the entire subdivision by the developer as a "Declaration of Restrictions," without reference to any particular lot, after the lot now before us had been originally conveyed out by the developer without any such encumbrance and after the developer had sold the majority of all the lots originally subdivided by him. There is a paucity of Florida law on this particular point but authority throughout the country, with which we agree, would indicate that a developer cannot seek to encumber property with restrictions after he has sold it. Anderson v. Courtney, 190 So.2d 493 (La. App. 1st Cir.1966); Sullens v. Finney, 123 Md. 653, 91 A. 700 (1914); Latchis v. John, 117 Vt. 110, 85 A.2d 575 (1952); 26 C.J.S. Deeds § 167(2) p. 1146; 20 Am.Jur.2d Covenants & Conditions, §§ 176-177; and 8 Fla.Jur. Covenants and Restrictions, § 38, pp. 42-43. By analogy, he likewise cannot release any restrictions after the property encompassed by any such restrictions has been sold by him. Batman v. Creighton, 101 So.2d 587 (Fla. 2d DCA 1958). As a consequence, we conclude that the Bank's attorney was correct in ignoring the declaration of restrictions recorded after the property in question had been sold by the developer, even though it was listed on the binder.
However, a totally different result pertains to the subsequent individual deed in the chain of title which specifically saddled the dentists' lot with a restriction for a single family residence and which was not listed by the Title Company. As we mentioned earlier, this latter properly recorded restriction was discovered by the Bank's attorney when he later searched the title to an adjacent lot. Upon realizing that the root of this title also covered the lot purchased by the dentists, the Bank's attorney notified all concerned, and ordered cessation of disbursements on the construction loan, even though this newly discovered restriction did not appear on the Title Company's binders or policies. One might ask why the Bank's attorney ever informed the Title Company of his discovery instead of keeping quiet, knowing he had a policy which did not contain the offending restriction. Quite apart from ethics, the answer to that question is contained in the policy itself which provides that encumbrances not known to the Title Company but which became known to the insured must be promptly reported to avoid loss of coverage.
The Title Company next points out that this was not a "marketability" policy, that the "use" is therefore not insured and that the dentists at all times owned unchallenged fee simple title. We are aware that for an extra premium, a policy insuring marketability can be obtained,[1] but we are not willing to accept the premise that all that was insured here was fee simple title. Were that the case, there would be no point in listing any exceptions on a policy, particularly of the restrictive covenant variety. The setting forth of the exceptions must have some function, otherwise the whole concept of title insurance would be meaningless. Buyers and sellers of real estate are often urged to dispense with attorneys and avail themselves of the allegedly more expert and more expeditious services of Title Companies. In this endeavor, Title Companies have taken over much of the lawyers' traditional function of searching an abstract and rendering an opinion. In the case now before us any knowledgeable attorney for the dentists would have jumped on the single family residence restriction had they been so employed and had it been listed. In fact, the Bank's attorney did jump on the exception which was set forth on the mortgagee binder, only to determine it to be ineffective.
We cannot blame any Title Company for listing that which it will not insure against. However, we agree with the trial judge that some state wide investigation is required if it transpires that a Title Company does not have to list that which it will not *742 insure against, even when the failure to do so proves vital to the purchasers' interests.[2]
The Title Company next contends in its brief that the policy excluded "... liability voluntarily assumed ... in settling any claim or suit... ." Thus it is reasoned that the dentists "voluntarily set out to remove the restrictions at the request of a third party [which] could not have enforced the deed restriction, i.e. the Bank." When asked at oral argument to expand on this, counsel for the Title Company argued that since the policy was an "actual loss" policy, any voluntary seeking of a solution by the insured does not involve an actual loss and is excluded under the policy language. To this end the Title Company cites Blessing v. American Title & Insurance Company, supra, in which the First District did indeed hold that a "voluntary satisfaction" of an outstanding judgment, omitted by the Title Company, was not an actual loss.[3] However, it is not explained in Blessing what the nature of the "voluntary satisfaction" was. If, for instance, the outstanding judgment was a valid enforceable lien on the property requiring payment to free the land in order to sell, use or mortgage it, then we disagree with the First District and find the satisfaction most in voluntary and the loss actual. In the case at bar, the Title Company contends that the Bank must continue disbursing and the dentists continue building until such time as they are enjoined and ordered to stop or tear the building down. It is contended that anything short of such a happening is not an actual loss. Therefore, the Title Company concludes that the bringing of a quiet title suit[4] and the cessation of construction was an unnecessary and purely voluntary act for which it should not be responsible. We cannot agree.
To hold as the Title Company here contends is to require the Bank and the dentists to ignore duly recorded restrictions and play Russian Roulette with the surrounding property owners to see whether they will legally enforce the restrictions. Furthermore, once the Title Company knew of the omitted restriction, it was not itself willing to reissue its insurance without including the very restriction which it simultaneously demands that the dentists ignore. It cannot have it both ways.
Finally, the Title Company argues that there can be no liability in this case because of the following clause in the policy:
7. LIMITATION OF LIABILITY
No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as insured, as provided in paragraph 3 hereof... .
and because of an existing interpretation of a similar clause in Burnette v. Title and Trust Company of Florida, 155 So.2d 735 (Fla. 2d DCA 1963). We do not agree for two reasons. First the wording of the clause in Burnette is not the same as in the instant policy. Second the argument that litigation must be commenced and concluded before the Title Company need become involved, does not necessarily appear to us to be supported by the foregoing language. Sub-paragraph (a) does not concern itself with litigation at all.
*743 As to sub-paragraph (b) quoted above, we recognize that litigation did occur in this case. However, it only began after the Title Company denied any liability under the policy. This being so, the language employed in the policy is but sophistry if we are asked by the Title Company to interpret it to mean that even if the claim is valid, the validity is, at a minimum, postponed if the Company arbitrarily denies coverage and the insured as a result is required to go it alone and file suit to clear or defend the title. We hold the Title Company to be estopped to make such an argument.
Suffice it to say that litigation has now been concluded in the case at bar and we hold that the omission of the restriction resulted in an actual loss to the dentists in the amount of attorneys fees and costs involuntarily incurred to quiet title to the lot in question.
As to other damages, although the trial judge did not pass on them, we are less certain. Resolution of this damages question is not necessary to our conclusion, but we note that had the Title Company listed the offending restriction, as it should have, construction could not have commenced in any case until the quiet title suit had been successfully concluded. This being so, the inclusion of the increased costs of construction occasioned by the delay may be problematical, depending perhaps on whether or not the dentists could have reneged on the purchase had they been aware of the restriction prior to closing.[5]
REVERSED AND REMANDED IN PART, AFFIRMED IN PART.
DOWNEY, C.J., and BERANEK, J., concur.
NOTES
[1] The record gives no indication that the dentists were offered this alternative.
[2] We note in passing that the record is silent as to whether the dentists were required to buy this property regardless of single family restrictions. Our examination of the purchase agreement is not conclusive on this subject. However, this issue was not argued at the trial level nor on appeal. We therefore ignore it.
[3] Also see Mazel v. American Title & Insurance Company, 127 So.2d 905 (Fla. 3d DCA 1961) cert. den. Fla., 133 So.2d 326.
[4] The Title Company refused to participate in or institute such a suit.
[5] See footnote 2.