SANDERLIN, JAMES B., Associate Judge.
Appellants, Sally Ritchey, plaintiff below, and Michael Paille, third party defendant and counterplaintiff below, seek reversal of a final summary judgment rendered in favor of Florida Power & Light Company, defendant, third party plaintiff and third party counterdefendant below.
Sally Ritchey filed a complaint against Florida Power & Light Company (FPL) which alleged that on November 12, 1981, while a passenger in a motorboat in Char *307 lotte Harbor (Peace River), she suffered injuries when the boat collided with a stanchion owned and maintained by FPL. The complaint further alleged that FPL was negligent in failing to place protective “fenders” around the stanchion and in failing to place reflector lights on the stanchion. Florida Power filed a third-party complaint against Michael Paille, the driver of the boat, seeking contribution on the grounds that Paille was negligent in -operating the boat. Paille filed a third-party counterclaim against FPL, seeking personal damages and damages for his boat. Paille’s counterclaim alleged that FPL was negligent in placing an unlit and unmarked stanchion in an area frequented by boats; that FPL was negligent in failing to protect it with “fenders” and that FPL was negligent in omitting reflector lights. Thereafter, FPL filed a motion for summary judgment on both of the claims against it. The trial court entered a final summary judgment-in favor of FPL on the claims.
On the night of November 12, 1981, Paille and his girlfriend, Sally Ritchey, took Paille’s boat out on the Peace River and passed under three bridges. While out boating, they stopped at the Anchor Inn on the north side of the river. The Anchor Inn is situated about one half to one quarter mile east of FPL’s power lines, which are anchored by stanchions owned by FPL.
The stanchions contain no markings, no lighting and no luminous material. The stanchions are large concrete and steel structures located about one hundred yards east of the Barron Collier Bridge. Each of them is a tripod of three concrete pilings about a foot square. Paille and Ritchey passed near the stanchions earlier that night while en route to the Anchor Inn.
They stayed at the Anchor Inn for fifteen minutes, noticed that the wind was whipping up the waves and decided to leave. They left for Paille’s house about 9:30 p.m. just as clouds began to cover the moon. Paille headed back into the middle of the river to reach the main channel to travel west under the three bridges toward home. There were no safe avenues back under the bridges except through the center of the main channel.
Paille testified that he knew that the stanchions holding the power lines were somewhere in the area, having previously boated there. He was watching for the stanchions using a portable nine-volt spotlight in addition to the red and green lights on the front of the boat. His boat had all the lights required by the Coast Guard. Although his boat could attain a maximum speed of 37-40 miles per hour, it was traveling at most 12-15 miles per hour. This speed was just enough to establish a plane, which is necessary because his boat is unstable below plane. Paille did not see the stanchion before he hit it. Both Paille and Ritchey were injured in the crash and the boat was almost destroyed. They spent the night on top of the overturned boat. Paille contends that his view was partially obstructed by the cloud cover which dissipated the moonlight.
The record reveals that the Peace River is navigable water. The parties agree that this is an admiralty case because the accident occurred in navigable waters. See Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). An admiralty case can be brought in either federal court or state court under the “saving to suitors” clause of 28 U.S.C. § 1333. See Madruga v. Superior Court, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954); Sipe v. Amerada Hess Corp., 689 F.2d 396 (3d Cir.1982); Green v. Ross, 481 F.2d 102 (5th Cir.), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973). All admiralty cases are governed by federal maritime law. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 378 n. 1, 90 S.Ct. 1772, 1776 n. 1, 26 L.Ed.2d 339, 344 n. 1 (1970); Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).
Appellants argue the applicability of 33 U.S.C.A. § 403 (West 1970) which re *308 quires federal approval for the erection of structures in navigable rivers of the United States. Yet, the appellants failed to show that the necessary authorization was not obtained. In fact, a witness testified that FPL had obtained a permit from the Army Corps of Engineers. Appellants also rely upon 33 C.F.R. § 67.05-1(a) (1981) which provides that structures thirty feet or less in diameter must carry an obstruction light visible for 360°. However, this regulation clearly applies only to artificial islands and structures which are erected for the purpose of exploring for, developing, removing and transporting resources from the seabed and subsoil of the outer continental shelf.
Finally, appellants refer to 33 C.F.R. § 66.01-35 (1981) which reads:
Any structure, mooring, mooring buoy, or dam, in or over the navigable waters of the United States shall display the lights and other signals for the protection of maritime navigation as may be prescribed by the Commandant. The prescribed lights and signals shall be installed, maintained and operated by and at the expense of the owner, or operator. After obtaining such approval or a statement of no objection from the Corps of Engineers as is required by law, the owner or operator shall apply in accordance with § 66.01-5 to the District Commander having jurisdiction over the waters in which the structure or floating obstruction will be located for a determination of the lights and other signals to be displayed. This requirement includes the temporary lights and signals to be displayed during the construction of a structure. If no regulation exists prescribing the lights or other signals required to mark any work or obstruction, each case shall be considered individually by the District Commander, who will prescribe such lights and signals as he considers necessary for the safety of navigation.
In response to a request for admission, FPL admitted that it had never applied to the United States Coast Guard to mark or light the stanchions involved in this accident. As FPL points out, part 66 of Title 33 C.F.R. is concerned with the regulation of private aids to navigation. Thus, FPL asserts that section 66.01-35 simply describes the procedures for establishing a private aid to navigation consisting of a fixed structure. However, we read this section as meaning that whenever a private party intends to erect a structure in navigable waters, albeit with permission, that party is required to apply to the Coast Guard for a determination of the lights and markings to be displayed.
The failure to comply with the federal safety regulation would constitute negligence per se. American Zinc Co. v. Foster, 313 F.Supp. 671 (S.D.Miss.1970), aff'd, 441 F.2d 1100 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971); Gatenby v. Altoona Aviation Corp., 407 F.2d 443 (3d Cir,1969). Appellants argue that this brings into play the principle of The Steamship Pennsylvania v. Troop, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874), which held that when a vessel is in violation of a statutory rule intended to prevent a collision, the burden is on the vessel to prove, not only that its violation was not a cause of the collision, but also that it could not have been a cause of the collision. This principle has been applied not only to ships but also to those who do not properly mark an object in navigable waters. Ison v. Roof, 698 F.2d 294 (6th Cir.), cert. denied, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983) (partially sunken barge); Gele v. Chevron Oil Co., 574 F.2d 243 (5th Cir.1978) (flare pipe). It may be that such a principle applies here, but at this stage of the litigation, it is unnecessary for us to decide. On this record, the issue of proximate cause is a jury question. A reasonable factfinder could conclude that FPL should have foreseen that if it failed to light or otherwise mark its stanchions, a boater might run into them. Paille’s knowledge of the existence of the stanchions would not necessarily absolve FPL from its responsibility to ensure that they could be seen in the darkness. See J.S. Casement & Co. v. Brown, *309 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582 (1893). Of course, any recovery by Paille would be subject to reduction to the extent that his negligence contributed to the accident since comparative negligence applies in admiralty cases. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).
We reverse the summary judgment in favor of FPL and remand the case for further proceedings.
GRIMES, A.C.J., and OTT, J., concur.