706 So.2d 383 (1998)
CITGO PETROLEUM CORPORATION, Appellant,
v.
FLORIDA EAST COAST RAILWAY COMPANY, Appellee.
Nos. 97-0809, 97-3405.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
*384 Ignacio E. Sanchez, Gregory J. Newcomm and Yolanda Gonzalez of Kelley Drye & Warren LLP, Miami, for appellant.
Andrew E. Grigsby and Rafael Sanchez-Aballi of Hinshaw & Culbertson, Miami, for appellee.
STEVENSON, Judge.
Citgo Petroleum Corporation ("Citgo"), appeals a final judgment quieting title to certain property in favor of Florida East Coast Railway Company ("FEC"). We reverse, as we find that Citgo was granted an express easement to construct and maintain a pipeline on the subject property by FEC's predecessor in title, the Florida Department of Transportation ("the DOT"), and that Citgo's failure to record this easement does not render it ineffectual against FEC since FEC was on inquiry notice of its existence.

Facts
The events that gave rise to this dispute extend back almost twenty years, and involve the expansion of the Fort Lauderdale-Hollywood International Airport and the resulting relocation of various utilities.
Prior to the airport's expansion in the early 1980's, Citgo had a licensing agreement with FEC under which Citgo had the "right and privilege" of operating a pipeline under FEC's main track, across FEC's railroad right-of-way. When Broward County and the DOT began the eastward expansion of the airport, both FEC's right-of-way and Citgo's pipeline had to be relocated. On November 10, 1983, Citgo reached an agreement with the DOT to relocate the pipeline. The 1983 Agreement acknowledges that Citgo owns various property rights along the original pipeline, and provides for the transfer of those property rights to the DOT in exchange for allowing Citgo to relocate and operate the pipeline on other property that had been acquired by the DOT. The Agreement also provides,
CITGO ... will at all times, both during and after construction, have free and complete access to the existing and new jet fuel line for the purposes of monitoring, maintenance, repair, and upkeep of said line.
The following month, Citgo contacted FEC, informing it that plans were underway to relocate the pipeline across the proposed[1] relocation of FEC's right-of-way, and requesting the appropriate engineering specifications. Along with the requested specifications, FEC sent Citgo an application for a new licensing agreement, which Citgo never executed. In the following months, Citgo and FEC continued to correspond concerning the specifications for the new pipeline. During these communications, FEC made it known that until it reached an agreement with Broward County to relocate its right-of-way, it could not consider granting Citgo a utility crossing permit.
On March 12, 1985, FEC finally reached an agreement with Broward County to relocate the railroad track. The 1985 Agreement provided that FEC would convey to Broward County its existing right-of-way in exchange for a replacement right-of-way further to the east. The parcels of land comprising the new right-of-way property had been acquired by either the DOT or Broward County, were subsequently transferred entirely to Broward County, and then conveyed from Broward County to FEC by quitclaim deed. FEC promptly recorded this conveyance. At that time, Citgo had no easements on record relating to any portion of this property.
The 1985 FEC-Broward County Agreement provided that the new right-of-way property was to be conveyed to FEC "free and clear of all encumbrances"; however, the Agreement required FEC to grant easements, licenses, and permits to various utility companies and other entities to allow storm sewers, fuel lines, and other appurtenances to cross the new right-of-way. The Agreement includes a compilation of "all such easements, licenses, or permits currently known *385 to the parties to be required." While the list includes over twenty roads, pipelines, and drainage crossings, it makes no mention of the relocated Citgo pipeline. In any event, Noel Pfeiffer, the Broward County attorney who prepared the 1985 FEC Agreement, testified that throughout the negotiations between the County and FEC, he had been unaware of the 1983 Citgo-DOT Agreement.
A month after FEC reached its relocation agreement with Broward County, FEC sent Citgo another application for a licensing agreement. Once again, Citgo did not execute the contract. Right around that time, between March and June of 1985, Citgo completed the new pipeline. It is conspicuously marked with protruding vents. FEC's subsequently-constructed railroad track was built between two of the vents.
On July 29, 1994, FEC commenced this action to quiet title. Citgo answered that it had an express easement by virtue of its 1983 Agreement with the DOT. On January 29, 1996, once these proceedings were well under way, Citgo recorded a Notice of Easement. The Final Judgment concludes that FEC was not on inquiry notice of any "potential unrecorded easement," and that, in any event, Citgo was never granted an easement. The trial court also declared Citgo's recently-filed Notice of Easement null and void. This appeal followed.

Citgo's express easement
Our de novo interpretation of the 1983 Agreement between Citgo and the DOTwherein the DOT allowed Citgo to relocate its pipeline onto property then owned by the DOTconvinces us that the DOT thereby granted Citgo an express easement to operate and maintain the relocated pipeline.
An easement is "the right in one other than the owner of the land to use land for some particular purpose or purposes." Dean v. MOD Properties, Ltd., 528 So.2d 432, 433 (Fla. 5th DCA 1988). In ascertaining whether the 1983 Agreement grants Citgo an easement, the applicable rule is that
no particular form and language are necessary to create an easement; rather, any words clearly showing the intention of the parties to create a servitude on a sufficiently identifiable estate is sufficient.
Hynes v. City of Lakeland, 451 So.2d 505, 511 (Fla. 2d DCA 1984) (citations omitted); see also 20 Fla.Jur.2d Easements § 14 ("Generally, any words clearly stating the intention to grant the easement are sufficient.").
In Florida Power & Light Co. v. Rader, 306 So.2d 565 (Fla. 4th DCA 1975), language less absolute than that of the 1983 Citgo-DOT Agreement was considered sufficient to grant FP & L an easement. The language in Rader granted FP & L
the right to set out and maintain poles and anchors for an electric transmission and distribution line, and the necessary appurtenances for such lines.
Id. at 566. If this provision is sufficient to create an express easement, then the following provision of the 1983 Citgo-DOT Agreement can do no less:
CITGO ... will at all times, both during and after construction [of the relocated pipeline], have free and complete access to the existing and new jet fuel line for the purposes of monitoring, maintenance, repair, and upkeep of said line.
(emphasis added).
Contrary to FEC's contention, we do not interpret any other provision of the 1983 Agreement as affirmatively establishing that an easement was not intended. Quite the opposite, we find that other provisions of the Agreement further manifest the DOT's intent to grant Citgo an easement. One such provision points out that a large portion of the jet fuel used by commercial carriers at the Fort Lauderdale-Hollywood International Airport passes through the Citgo pipeline, and that a disruption of this fuel delivery system for more than even one hour would cause injury to the public. In light of this finding by the DOT, we do not believe that the DOT could have intended for its successors in title to have the power to restrict Citgo's access to the pipeline.

FEC's inquiry notice
We also reject FEC's argument that Citgo's failure to record its easement renders it ineffectual against FEC. Under Florida's recording act, FEC is subject to Citgo's pre-existing, unrecorded easement unless FEC was "without notice" of it. See § 695.01(2), *386 Fla. Stat. (1995); Ruotal Corp. v. Ottati, 391 So.2d 308, 309 (Fla. 4th DCA 1980); Florida Power & Light Co. v. Rader.[2] If the circumstances known to FEC when it acquired the subject property were "such as should reasonably suggest inquiry" into Citgo's property rights, then FEC is deemed to be on "inquiry notice" ofand bound bythose encumbrances which would have been discovered upon a reasonable inquiry. See Chatlos v. McPherson, 95 So.2d 506, 509 (Fla.1957). Applying this principle, in Florida Power & Light Co. v. Rader, where the transferee took possession of land upon which FP & L had constructed power lines and poles pursuant to an unrecorded easement, this court reversed the trial court's finding that FP & L's failure to record its easement rendered the easement ineffectual against the transferee. The court explained:
Actual, open and obvious possession is constructive notice to all the world of whatever right the occupant has in the land, and puts upon inquiry those acquiring any title to or lien upon the land so occupied to ascertain the nature of the rights the occupant has in the premises.
306 So.2d at 567.
Pursuant to Rader, we conclude, as a matter of law, that Citgo's actual, open, and obvious possession by construction of a conspicuous pipeline placed FEC on inquiry notice of Citgo's easement. As FEC conceded below, it had actual knowledge that Citgo was constructing a pipeline across FEC's proposed right-of-way; in fact, FEC and Citgo corresponded concerning the specifications for building the pipeline beneath FEC's tracks, and FEC later built its new track between vents which conspicuously protruded from the relocated pipeline. See Kirma v. Norton, 102 So.2d 653 (Fla. 2d DCA 1958)(holding that a grantee was bound by a sewer pipe easement which crossed his land and emptied into a river, even though the pipes were underground, as the emergence of the pipes from the river bank should have put a prudent buyer on notice to inquire, and he was, therefore, bound by what he would have learned). A review of Citgo's 1983 Agreement with the DOT would have revealed to FEC that Citgo "will at all times, both during and after construction, have free and complete access to the existing and new jet fuel line...."
In light of its prior licensor-licensee relationship with Citgo, FEC argues that its actual knowledge of the pipeline is not tantamount to inquiry notice of an easement. However, the presence of the pipeline put FEC on inquiry notice of "whatever right" Citgo had in the land. See Rader, 306 So.2d at 567; accord Randolph v. Martin, 100 So.2d 198, 199 (Fla. 3d DCA 1958)(holding the transferee to be on inquiry notice of an easement where she was aware of the easement-holder's use of the property even though she did not know the "extent" of the easement-holder's claim).
Accordingly, we reverse the trial court's determination that Citgo does not have an effective easement to operate and maintain the relocated pipeline across FEC's new right-of-way.
FARMER and KLEIN, JJ., concur.
NOTES
[1] FEC had not yet reached an agreement concerning the relocation of its track, and it would not reach such an agreement for another fifteen months, in March of 1985.
[2] Florida's recording act provides:

No conveyance, transfer, or mortgage of real property, or of any interest therein ... shall be good and effectual in law or equity against ... subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law....
§ 695.01(2), Fla. Stat. (1995)(emphasis added).