NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHN A. HAGELIN, JR., and REBECCA
HAGELIN,

        Appellants,

v.

U.S. FUNDING GROUP, LLC; ORGAIN E.
McCULLOUGH; and JENNIFER
McCULLOUGH,

        Appellees.

Case No. 2D14-2871

Opinion filed November 6, 2015.

Appeal from the Circuit Court for Charlotte
County; Joseph Foster, Judge.

Janelle A. Weber of Shutts & Bowen LLP,
Tampa; and Michael L. Gore of Shutts &
Bowen LLP, Orlando, for Appellants.

Thomas H. Dart and Jason T. Gaskill of
Adams and Reese LLP, Sarasota, for
Appellee U.S. Funding Group, LLC.

No appearance for remaining Appellees.

MORRIS, Judge.

        John and Rebecca Hagelin appeal an order entering partial summary

judgment in favor of U.S. Funding Group, LLC, on count II of its complaint against the

Hagelins. The underlying litigation involves a dispute over alleged easements on property on Little Gasparilla Island (the Island). U.S. Funding acquired gulf-front property on the Island as a result of a foreclosure proceeding. Thereafter, U.S. Funding filed a complaint against the Hagelins and other adjacent property owners and obtained a declaratory judgment on count II that an easement grants U.S. Funding the right to use a dock on the Hagelins' property. On appeal, the Hagelins argue that no valid easement was created for the use of the dock on the Hagelins' property. We conclude that the summary judgment evidence offered by U.S. Funding does not support the trial court's conclusion that a valid easement grants U.S. Funding the right to use the dock, and we reverse the decision of the trial court.

### I. Background

In January 2002, Sandra Ippolite owned a tract of land located on the Island. The tract consisted of a portion of Lot 3 and the entirety of Lots 4 and 5. All three of the lots are long, rectangular-shaped lots running the width of the island. The shorter sides of each lot front on Little Gasparilla Sound to the east and on the Gulf of Mexico to the west. Lot 3 is the northernmost lot, Lot 4 is in the middle, and Lot 5 is the southernmost lot.

On February 26, 2002, Ippolite executed a Declaration of Covenants and Easements, in which she recited that she is the owner of "Parcels A through D according to the attached Master Site Plan" and "Parcel 3." Although the Declaration referenced the attachment of a Master Site Plan, Ippolite did not attach a Master Site Plan to the Declaration. Rather, Ippolite attached Exhibit A, a two-page document describing the parcel of land that is Parcel A, although Exhibit A does not refer to the

land as Parcel A.  Even though no Master Site Plan was attached, it is apparent from other documents in the record that Ippolite had created Parcels A through D by dividing Lot 4 into two parcels (Parcel A and D) and Lot 5 into two parcels (Parcels B and C). Parcels A and B are eastern parcels that front the Sound, and Parcels C and D are western parcels that front the Gulf.

In addition to dividing two of the lots to create four parcels, the Declaration purports to create certain easements.  Relevant to this case, the Declaration provides that "[t]he owners of the Lot 4 Parcels ('Parcels A and D') shall have a pedestrian ingress and egress easement 6 feet in width per sketch and across a portion of Parcel A so as to have access to the existing dock in Little Gasparilla Sound as depicted on the attached Master Site Plan."  It appears from other documents in the record—and it is undisputed—that this dock is located on Parcel A.  The Declaration also states that "[t]he Lot 5 Parcels ('Parcels B and C') shall have a pedestrian ingress and egress easement six feet in width per sketch and across a portion of Parcel B so as to have access to the exiting L-shaped dock in Little Gasparilla Sound as depicted on the attached Master Site Plan."  It appears that this L-shaped dock is located on Parcel B.

On the same day Ippolite executed the Declaration, February 26, 2002, Ippolite delivered to George and Lynne David a warranty deed for a parcel of property. This parcel was later conveyed to the Hagelins and is the subject of the dispute in this appeal.  The warranty deed to the Davids does not describe the parcel but referenced an Exhibit A, which appears to be the same Exhibit A that was attached to the Declaration.  Thus, the warranty deed conveyed Parcel A to the Davids.  Exhibit A to the warranty deed references a six-foot wide easement "for pedestrian access to the Gulf of

Mexico and Little Gasparilla Sound," but this gulf-to-sound easement does not reference the dock on Parcel A. The warranty deed states that the property in Exhibit A was "[s]ubject to current taxes, easements and restrictions of record." The warranty deed does not contain any reference to the Declaration executed that same day by Ippolite.

Approximately two months later, on April 17, 2002, the Davids' warranty deed was recorded at 7:29 a.m. and the Declaration was recorded forty minutes later at 8:10 a.m.

On August 15, 2002, Ippolite delivered a warranty deed to Orgain E. and Jennifer McCullough, transferring to them one of the parcels. The warranty deed does not describe the property but refers to an attached exhibit. That exhibit describes Parcel B, which fronts the Sound and lies south of Parcel A. That exhibit also states that Parcel B is subject to the six-foot-wide gulf-to-sound easement. The property described in the exhibit to the McCulloughs' deed has an L-shaped dock which extends into the Sound, but the deed makes no mention of the dock or any easement connecting the dock to the gulf-to-sound easement. The McCulloughs' warranty deed states that it is "[s]ubject to current taxes, easements and restrictions of record."

Also on August 15, 2002, Ippolite executed an Amended and Supplemental Declaration of Covenants and Easements. The Amended Declaration and the McCulloughs' warranty deed were both recorded at the same time on August 30, 2002. The Amended Declaration restates the Declaration and further purports to grant the owners of Parcels C and D a temporary "pedestrian and vehicular ingress and egress easement solely" for construction purposes on the area between the two existing docks on Little Gasparilla Sound. The Amended Declaration attached a document titled

Master Site Plan that appears to contain legal descriptions of Parcels A through D. Ippolite was the only person to execute the Amended Declaration.

On May 17, 2005, Ippolite executed a third declaration, the First Amendment to Declaration of Covenants and Easements. This First Amendment references the original Declaration and purports to amend the Declaration, without reference to the Amended Declaration executed in August 2002. This First Amendment also attached a Master Site Plan similar to the one attached to the Amended Declaration filed in 2002. Again, Ippolite was the only person to execute the First Amendment.

In May 2008, a foreclosure sale was held for Parcels C and D, the two parcels fronting the Gulf, and U.S. Funding acquired both parcels.

On May 9, 2011, the Davids conveyed their property, Parcel A, by warranty deed to the Hagelins. Again, the warranty deed to the Hagelins does not describe the property but refers to an attached Exhibit A. Exhibit A describes Parcel A and refers to the gulf-to-sound pedestrian easement with no mention of the dock. The warranty deed was recorded on May 11, 2011.

In October 2012, U.S. Funding filed suit against the Hagelins and the McCulloughs. The operative complaint, filed in May 2013, consists of seven counts. The only count at issue in this case, count II, relates to U.S. Funding's right to use the dock on the Hagelins' property. U.S. Funding asked for a declaration "as to its ability to use the dock which exists on" Parcel A. U.S. Funding filed a motion for summary judgment on count II, claiming that U.S. Funding is entitled to use of the dock as provided by the easements in the three declarations. The Hagelins filed a motion for

summary judgment, arguing that the easements are void because the original owner of the properties, Ippolite, could not grant easements to herself. After a hearing, the trial court granted U.S. Funding's motion for summary judgment and entered judgment in its favor on count II. The order states that the Hagelins' property is subject to the terms of the declarations and that U.S. Funding "has the right to enforce" the terms of the declarations, "including but not limited to the use of the dock located on Parcel A."

**II. Analysis**

On appeal, the Hagelins argue that the easement at issue is invalid for several reasons. We agree that the trial court erred in granting summary judgment in favor of U.S. Funding on count II for the reasons discussed below.

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Menendez v. Palms West Condominium Ass'n, 736 So. 2d 58 (Fla. 1st DCA 1999). Thus, our standard of review is de novo." Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

The Davids' warranty deed includes a gulf-to-sound pedestrian easement that makes no mention of the dock on Parcel A. And while the Davids' warranty deed states that the property was "[s]ubject to current taxes, easements and restrictions of record," it is undisputed that the Declaration and the purported dock easement in that Declaration were not yet "of record" when the deed was delivered to the Davids. The Davids took title to Parcel A at the earliest fifty days before Ippolite recorded the Declaration or at the latest forty minutes before Ippolite recorded the Declaration. See Sweat v. Yates, 463 So. 2d 306, 307 (Fla. 1st DCA 1984) ("[A] deed takes effect from

- 6 -

the date of delivery, and the recording of a deed is not essential to its validity as between the parties or those taking with notice."); see also Sargent v. Baxter, 673 So. 2d 979, 980 (Fla. 4th DCA 1996) ("A grantor's recording of a deed . . . is generally presumed equivalent to delivery."). Thus, even if the Declaration clearly creates an easement for access to the dock on Parcel A, it was not a recorded document at the time that the Davids took the property. And due to the summary nature of the proceedings below, there is no evidence in the record that the Davids took possession of Parcel A with any knowledge of the Declaration or any other indication of a possible easement for access to the dock on Parcel A. See Kirma v. Norton, 102 So. 2d 653, 657 (Fla. 1958) (holding that generally "a bona fide purchaser without notice of easements[] takes the property free of such easements"); cf. Flanigan's Enters., Inc. v. Shoppes at 18th & Commercial, Inc., 954 So. 2d 758, 764 (Fla. 4th DCA 2007) (recognizing that purchaser may be charged with notice of an unrecorded property interest and therefore bound by the unrecorded property interest).

We further conclude that the Declaration does not support summary judgment in favor of U.S. Funding. "As an interest in land, an easement may be created by express grant contained in a deed or other written document." Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 464-65 (Fla. 5th DCA 2005) (citing several cases). While "[t]here are no magical words that one must divine in order to create an express easement," the words granting the easement must show "the intention of the parties to create an easement on a sufficiently identifiable estate." Id. at 465 (citing Citgo Petroleum Corp. v. Fla. R. Coast Ry. Co., 706 So. 2d 383 (Fla. 4th DCA 1998)). "Documents that convey easements should be construed in the same manner as

contracts . . . ." Id. (citing One Harbor Fin. Ltd. v. Hynes Props., LLC, 884 So. 2d 1039 (Fla. 5th DCA 2004)).  While the Declaration purports to create easements over Parcels A, B, C, and D, and it mentions a dock on Parcel A, the Declaration fails to describe those parcels.[1]  A Master Site Plan was referenced in the Declaration, but it was not attached.  The only attachment to the Declaration, Exhibit A, contains a legal description of Parcel A.  But Exhibit A mentions only a "[six]-foot-wide easement for pedestrian access to the Gulf of Mexico and Little Gasparilla Sound."  Exhibit A makes no mention of a dock on Parcel A.  Therefore, the Declaration executed by Ippolite in 2002 does not clearly create an easement for use of or access to the dock on Parcel A.

U.S. Funding argues that the Hagelins, who obtained the property in 2011, took the property with constructive, actual, and implied notice of the Declaration recorded in 2002 and the subsequent amendments recorded in 2002 and 2005.  While the Hagelins admitted that they were aware of the Declaration and amendments when they purchased Parcel A, they challenged the validity of those documents and they denied that the Davids had informed them that adjacent properties had the right to use their dock.  As discussed above, the Declaration does not unambiguously create a dock easement on Parcel A and it is not an undisputed fact that the Davids took Parcel A subject to the Declaration or the dock easement.  And it follows that if the Davids took Parcel A unrestricted by the Declaration, the property is also not subject to the amendments that were later unilaterally executed by Ippolite, who no longer owned Parcel A.  See Endruschat v. Am. Title Ins. Co., 377 So. 2d 738, 741 (Fla. 4th DCA 1979) ("[A]uthority throughout the country, with which we agree, would indicate that a

_____

[1]The Declaration contains a legal description of Lot 3, which was not divided and which is not at issue in this case.

- 8 -

developer cannot seek to encumber property with restrictions [a]fter he has sold it."). Furthermore, the terms of the Declaration provide that the Declaration "may be modified, amended or terminated, in whole or in part, only by agreement of a majority of the Owners in writing." There was no evidence offered in support of summary judgment showing that Ippolite or the "Owners" complied with this provision of the Declaration. Therefore, we cannot conclude that the amended declarations impose an easement on Parcel A and that the Hagelins were or should have been aware of that easement.

Because there was no undisputed evidence offered to show that the Davids took the property with notice of a dock easement and because the documents do not unambiguously create an easement for use of or access to the dock on Parcel A, the trial court erred in granting summary judgment on this issue. See Buie v. Bluebird Landing Owner's Ass'n, 172 So. 3d 519 (Fla. 1st DCA 2015) (holding that because the language of the easement was ambiguous, the parties' intentions were not clear and summary judgment was improperly granted); Palm Beach Pain Mgmt., Inc. v. Carroll, 7 So. 3d 1144, 1145-46 (Fla. 4th DCA 2009) (holding that when a contract is ambiguous and the parties suggest different interpretations, summary judgment is inappropriate because an issue of fact exists).

Reversed and remanded for proceedings consistent with this opinion.


SILBERMAN and CRENSHAW, JJ., Concur.